UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CAROLINA CASUALTY INSURANCE GROUP, LLC, | ) | Case No.: 1:09 CV 2028 |
| | ) | |
| Plaintiff | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| P.B. EXPRESS, INC., | ) | |
| | ) | |
| Defendant | ) | ORDER |

Plaintiff, Carolina Casualty Insurance Company ("CCIC")[1], brings the instant suit against Defendant, PBX Express, Inc. ("PBX" or "Defendant"). Currently pending before the court is Defendant's Motion for Summary Judgment (ECF No. 32) and Plaintiff's Motion for Partial Summary Judgment (ECF No. 33). For the reasons stated herein, the court denies both Motions.

## I. FACTS AND PROCEDURAL HISTORY

CCIC provided annual commercial insurance policies to PBX, an intermodal trucking company[2], from March 18, 2001, to March 18, 2006. (Compl. ¶ 3, ECF No. 1-1.) Although PBX is a commercial trucking company, it does not own the tractor trailers it uses to pick up and deliver freight, it instead contracts with independent owner-operators. (Yun Dep., ECF No. 33-1, at 34.)

---

[1] Though the case is captioned with Plaintiff as Carolina Casualty Insurance Group, LLC, it was formerly Carolina Casualty Insurance Company, which is used by Plaintiff in its pleadings.

[2] Intermodal is the "modern practice of shipping goods in 20 ft., 40 ft or 53 ft. steel shipping containers from manufacturers to the customer," in which the "metal container is transferred between multiple modes of transportation." (Dae Kee Yun Aff. at 1, ECF No. 32-3.)

PBX has to maintain trucker liability insurance for each tractor trailer under its operation because the United States Department of Transportation requires auto liability insurance for trucking companies. (Yun Dep. at 34; McGill Dep. at 4, 20, ECF No. 32-1.) Heil & Heil Agency ("Heil") was retained by PBX, as its retail agent, to help it shop among insurers each year. (McGill Dep. at 31.) CCIC does not sell insurance policies directly through retail agents. Instead, CCIC places its insurance with contracted agents who issue the policy through a retail agent. Creative Underwriters ("Creative") is CCIC's retail agent who sold the policies that insured PBX. (McGill Dep. at 30-33.) Creative can bind and quote policies for CCIC for certain sized risks, "typically smaller trucking operations up to 15 units maximum." (*Id*. at 30-31.) For larger operations, Creative can "submit what [CCIC] deem[s] fleet business over a certain account number threshold . . . for purposes of underwriting at the home office." (*Id*. at 31.) Since PBX is a larger trucking operation, Creative was responsible for gathering the necessary information from PBX for the underwriter to review, such as the complete application, driver information, equipment information, financial data, and motor vehicle reports, in order for CCIC to assess the risk and underwrite the insurance policy. (*Id*. at 32-33.)

The first policy was signed by Dae Kee Yun ("Yun"), President of PBX, on March 16, 2001, and insured PBX through March 2002. (Compl. ¶ 3; Pl.'s Mot. for Partial Summ. J. at 1-2, ECF No. 33.) PBX renewed the policy four times until it expired in March 2006. (*Id*.) Each insurance policy issued by CCIC included a Reporting Form Endorsement page, which stated that the premium Defendant was to pay CCIC for each insurance policy was to be calculated according to Defendant's gross revenues. (Compl. ¶¶ 4-6, Exs. A-E.) This page stated that Defendant would pay a composite rate, or percentage, of its gross revenues. (Compl. ¶ 5.) Each Reporting Form Endorsement also

stated the estimated annual and monthly premiums. (*Id*. at ¶ 6.) To determine the actual monthly premiums, Defendant was required to submit its monthly gross receipt amounts to Plaintiff. (*Id*. at ¶ 7.)

In 2004, PBX filed a separate lawsuit against several parties, including its former accountant, Lou-Ray Associates ("Lou Ray"), for claims relating to embezzlement by PBX's employees. (Compl., ¶ 10.) It was through this litigation that documents and testimony were produced that indicated there were discrepancies between the amount of gross revenue reported in PBX's monthly financial statements, and what was reported to CCIC for purposes of insurance premium payment. (*Id*. at ¶¶ 11-12.) Upon learning this information, CCIC sent a letter to Yun, requesting that he submit the correct gross receipt amounts to CCIC immediately. (*Id*. at Ex. F.) CCIC claims that despite requests to audit Defendant's financial statements, it became clear that Defendant would not comply. (*Id.* at ¶ 14.)

As a result, Plaintiff was granted a petition for discovery in the Cuyahoga County Court of Common Pleas, Case No. CV-06-589399, on April 17, 2006, to obtain the monthly financial statements for the policy period, as well as the annual financial statements prepared by Lou-Ray. (*Id*. at ¶ 15.) However, despite the court order, PBX only produced certain financial information. (*Id*. at ¶ 16.) It only produced information for the years 2001-2003. (*Id*.) CCIC alleges that the financial records PBX has produced demonstrate that it substantially under-reported its gross revenues from 2001-2003, resulting in approximately $1.3 million in underpayment of insurance premiums during that period. (*Id*. at ¶ 18.)

Plaintiff filed the instant suit against Defendant on August 14, 2009, in the Cuyahoga County Court of Common Pleas. Defendant removed this matter to this court on August 31, 2009. (Notice

- 3 -

of Removal, ECF No. 1.) Plaintiff has alleged breach of contract, promissory estoppel, unjust enrichment, and fraud. (Compl. at 5-7.) Plaintiff seeks compensatory damages in excess of $25,000, punitive damages, prejudgment interest, costs associated with bringing this action, including reasonable attorney's fees, and any other relief this court deems appropriate. (*Id*. at 8.)

Defendant filed a Motion for Summary Judgment on May 18, 2010. (ECF No. 32.) Defendant does not allege the specific counts it seeks summary judgment on, but based on its arguments, the court will treat it as a motion for partial summary judgment on the breach of contract claim. Defendant asserts it is entitled to summary judgment because it satisfied the reporting form conditions of the insurance policy, and there has been no actionable breach entitling CCIC to damages. Plaintiff filed a Motion for Summary Judgment as to Breach of Contract Claim on May 19, 2010. (ECF No. 33.) Plaintiff contends that it is entitled to summary judgment because certain issues which are undisputed demonstrate Defendant breached the contract, and will narrow the focus of the litigation to the true matters of controversy–the issue of damages.

## II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. ...

In reviewing summary judgment motions, this court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970); *White v. Turfway Park Racing Ass'n, Inc.*,

909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252. However, "[c]redibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment." *Ahlers v. Scheibil*, 188 F.3d 365, 369 (6th Cir. 1999).

The moving party has the burden of production to make a prima facie showing that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). If the burden of persuasion at trial would be on the non-moving party, then the moving party can meet its burden of production by either: (1) submitting "affirmative evidence that negates an essential element of the nonmoving party's claim"; or (2) demonstrating "to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id*.

If the moving party meets its burden of production, then the non-moving party is under an affirmative duty to point out specific facts in the record which create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show "more than a scintilla of evidence to overcome summary judgment"; it is not enough to show that there is slight doubt as to material facts. *Id*. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Fed. R. Civ. P. 56(e).

### III. LAW AND ANALYSIS

Under Ohio law, "an insurance policy is a contract whose interpretation is a matter of law." *Cincinnati Ins. Co. v. CPS Holdings Inc.*, 875 N.E.2d 31, 33 (Ohio 2007) (*quoting Sharonville v. Am. Emps. Ins. Co.*, 846 N.E.2d 1256 (Ohio 2006)). The "primary role of the court in examining a written instrument is to ascertain and give effect to the intentions of the parties." *Madison International Liquidity Fund, LLC v. Al Neyer, Inc.*, No. C-1-08-305, 2009 WL 2169141, at *5 (S.D. Ohio 2009). Contract terms are usually to be given their ordinary meaning when the terms of the contract are clear on their face, and the court has no need to construe the evidence otherwise. *Lincoln Elec. Co. v. St. Paul Fire and Marine Ins. Co.*, 210 F.3d 672, 683 (6th Cir. 2000). Parol, or extrinsic, evidence is only admissible if the terms of the contract are ambiguous, and can only be used to interpret, not contradict, the express language of the contract. *Id.* The Ohio Supreme Court stated in *Foster Wheeler Enviresponse, Inc. v. Franklin Cnty. Convention Facilities Auth.*, 678 N.E.2d 519, 526 (1997), that "[t]he intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." (internal citation omitted). If the language of a contract "is clear and unambiguous...there is no issue of fact to be determined." *Lincoln Elec. Co.,* 210 F.3d at 684. Ambiguity exists "where contract language is susceptible to two or more reasonable interpretations." *Glidden Co. v. Kinsella*, 386 F. App'x 535, 542 (6th Cir. 2010) (*quoting*

*Potti v. Duramed Pharm. Inc.*, 938 F.2d 641, 647 (6th Cir.1991)). However, a term is not ambiguous merely because two parties offer substantially different interpretations. *Id.*; *accord 216 Jamaica Ave., LLC v. S & R Playhouse Realty Co.*, 540 F.3d 433, 440 (6th Cir. 2008).

CCIC alleges that certain issues are undisputed in this case and that it is entitled to partial summary judgment on the liability issue of its breach of contract claim. PBX argues that it is not in breach of the Contracts and is entitled to summary judgment because it satisfied the reporting form conditions of the insurance policies. To prove a breach of contract claim, a plaintiff must establish the existence of a contract, performance by the plaintiff, breach by the defendant, and damage to the plaintiff. *Doner v. Snapp*, 649 N.E.2d 42, 44 (Ohio App. 1994). CCIC and PBX entered into five policies together: 1) March 2001- March 2002 Policy; 2) March 2002-March 2003 Policy; 3) March 2003- March 2004 Policy; 4) March 2004-March 2005 Policy; 5) March 2005-March 2006 Policy (individually, "the Contract," collectively, "the Contracts"). (ECF No. 33-2.) These were marked exhibits 10-14 at Yun's deposition. (Yun Depo. at 126-136.) Yun testified that Exhibit 10 is a true and accurate copy of the policy of insurance issued by CCIC to PBX for March 2001 to March 2002. (*Id*. at 126.) He also testified that he signed the Contract in his capacity as President of PBX, and understood that he was choosing the option to pay CCIC premiums based on gross receipts. (*Id*. at 126, 128.) Yun testified to the same for Exhibit 11, the CCIC policy issued to PBX for March 2002- March 2003 (*Id*. at 132-133); Exhibit 12, the CCIC policy issued to PBX for March 2003-March 2004 (*Id*. at 134, 136); Exhibit 13, the CCIC policy issued to PBX for March 2004-March 2005 (*Id*. at 136, 137); and Exhibit 14, the CCIC policy issued to PBX for March 2005-March 2006) (*Id*. at 138, 139). CCIC and PBX therefore entered into multiple contracts together, through each year's insurance policy.

All of the insurance policies indicate that PBX selected "gross receipts" as the basis that it would use to pay CCIC premiums. (Compl., Exs. A-E.) PBX had the option to have the premium calculated on the basis of mileage, but chose not to, repeatedly selecting gross receipts. "Gross receipts" was defined in the policy as, "the total amount to which you are entitled for the transportation of property during the reporting period." (*Id*.) Under "gross receipts" the form also stated:

> [g]ross Receipts does not include (a) the amount which you pay to railroads, steamship lines, airlines and interline connecting motor carriers operating under their own state or federal permits; (b) direct taxes on the shipper which you collect as separate items and pay directly to the government division; (c) C.O.D. collections for cost of merchandise including collection fees; (d) warehouse storage charges; (e) advertising income.

(Compl., Ex. A at 1.) "Mileage" was defined in the policy as, "the total mileage, loaded and unloaded of all 'autos' you operate for the transportation of property or people during the reporting period." (Compl., Exs. A-E.) Yun testified that from 2001 to 2006 it was his choice to get insurance policies from CCIC. (Yun Dep. at 143.) He further testified that gross receipts was the basis for the premium calculation for each of the policies, and not mileage. (*Id*.) Therefore, it is clear from the language of the Contracts and Yun's testimony, that PBX selected gross receipts as the basis for the calculation of the premium, and mileage, though an option, was not selected.

Yun testified that CCIC provided insurance under the terms of the policy for each and every year. (Yun Dep. at 142.) He further stated that CCIC performed under the terms of the Contracts. (*Id*.) Therefore, CCIC fulfilled its obligations under the Contracts.

Yun testified that in exchange for CCIC's performance, PBX was supposed to pay the premiums as called for by the policies. (*Id*.) He stated that the Reporting Form Endorsement included in each policy indicated how the premiums would be calculated, which was using gross receipts, and not mileage. (*Id*. at 142-43.) Yun testified that based on his endorsement of the

Contracts, he understood that PBX was going to pay the premium based upon gross receipts, and not mileage. (*Id*. at 128.) He admitted that in spite of this understanding, PBX calculated its gross receipts based on mileage. (*Id*.) PBX had calculated freight revenue as the total number of miles driven by PBX trucks during the recording period multiplied by the rate charged per mile. (Def.'s Mot. Summ. J. at 8; Def.'s Br. in Opp'n at 2, ECF No. 34.) PBX maintains that because "gross receipts are limited to receipts 'for the transportation of property during the reporting period'," its calculation of freight revenue satisfies the policies' terms, and it has not breached the Contracts. (Def.'s Mot. Summ. J. at 9.)

PBX asserts that "[i]t would have been very difficult and time consuming to break out of each invoice generated by the PBX terminals the freight revenue. (Yun) The simpler and most efficient means was to take the mileage records from the drivers at the terminal and multiply it by the mileage rate for the terminal." (Def's Mot. Summ. J. at 8.) PBX states that its "financial statements do not account for freight revenue as a discrete category of income." (Def's Mot. Summ. J. at 7.) Instead, "[t]here are multiple categories of services, fees and surcharges," which PBX receives payment for, but are not "captured as separate categories of income." (*Id*.) PBX contends that there are a "wide array of things" it receives payment for that would not be a part of its freight revenue. (*Id*.) Yun states that

> [t]he way Lou Ray Associates accounted for sales made it impossible for [him] to identify what his monthly freight revenue was. Freight revenue was lumped together with all other revenue under sales. Other items included in sales are empty container dryage, repairs, chassis rental, container yard storage, drop fees, hazmat permit, prepull, lumper fee, detention, stop off charge, steam cleaning, scale tickets, overweight fines, tire reimbursement and per diem.

(Yun Aff. at 2-3, ECF No. 32-3.) Yun also states that he "advised [his] insurance agent that PBX was not set up to invoice separately for freight moves, and to get an exact freight revenue number,

someone would need to review each invoice individually and manually to record the freight charges. [He] was told to report what [he] thought was fair." (*Id.* at 2.) CCIC maintains that this makes it clear that PBX breached the Contracts by using a method to calculate its premium payments that was contrary to the express terms of the Contracts, as the numbers PBX reported were not its gross receipts, just a calculation of its mileage.  PBX argues that it is not in breach of the Contracts because it satisfied the reporting form conditions of the insurance policies.

The dispositive issue is which costs are properly viewed as associated with gross receipts. Gross receipts are defined as "the total amount to which [PBX is] entitled for the transportation of property during the reporting period." (Compl., Exs. A-E.)  Defendant has asserted that the use of its total number of miles driven during the reporting period multiplied by the rate it charges, was an adequate reflection of the gross receipts. Plaintiff contends that Defendant's calculation is improper, and it was actually entitled to something greater than the mileage calculation made by Defendant. There is nothing in the Contracts that limits the calculation of gross receipts to the freight charges advanced by Defendant.  However, there is insufficient evidence before the court to determine what the nature of the charges are for the "transportation of property during the reporting period." Defendant's claims that it was only reporting freight charges because it cannot figure out the other charges, indicates that it understood there was more to the gross receipt calculation than just freight charges.

The Contract itself does give some guidance on gross receipts, and what is not includable in gross receipts (as discussed above).  Defendant has argued that a range of things, such as "empty container dryage, chassis rental, chassis split, and container yard storage" are not included. (Def.'s Mot. Summ. J. at 7.)  While the court can clearly say as indicated above, that Defendant has not followed the proper method for determining gross receipts, the parties have not put sufficient

- 10 -

information before the court for it to rule in or rule out, the various charges which arguably make up gross receipts.  Therefore, the court, in its discretion, will deny Plaintiff's and Defendant's Motions for Summary Judgment at this time, without prejudice.

## IV.  CONCLUSION

For the foregoing reasons, the court denies without prejudice Plaintiff's Motion for Partial Summary Judgment (ECF No. 33) and Defendant's Motion for Summary Judgment (ECF No. 32).

IT IS SO ORDERED.

/s/ *SOLOMON OLIVER, JR.*
CHIEF JUDGE
UNITED STATES DISTRICT COURT

March 29, 2011